[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ARTICLE I The Dissolution of the Marriage
It is found that all of the allegations of plaintiff's complaint have been proven, that the marriage has broken down irretrievably, and the marriage is ordered dissolved for that reason.
 ARTICLE II The Marital Estate of the Parties
CT Page 8799
22 Hazelmeadow Place, Simsbury, CT value $ 140,000 less mtg. — 120,778 --------- equity $ 19,202
1/2 equity $ 9,601
1995 Plymouth Voyager value loan balance $ 9,000
equity —
Household furniture effects —
Peoples Bank — checking savings accounts 100
Life Insurance face value $10,000 C.S.U. 0
 ------- Subtotal $ 9,701
Defendant
Equity in 22 Hazelmeadow Place, Simsbury, CT $ 9,601
1996 Subaru Lease value $ 7,000 loan balance 7,205
equity —
Household furnishings —
Franklin Trust — savings checking accounts $ 226
Hartford Federal Credit Union 51
Collinsville Savings 90
Life Insurance face value $69,000 C.S.U. —
State of Connecticut Teachers Retirement Fund $25,276 (not vested)
Subtotal $35,244 CT Page 8800
Total Marital Estate $44,945
 ARTICLE III The Court's Finding Relating to the Stipulation of the Parties Concerning the Family Home
During the month of September, 2000 each of the parties moved for exclusive possession of the marital home. On April 3, 2001 in a pendente lite proceeding the dispute was resolved when the parties stipulated to and the court approved their following agreement:
 "The plaintiff shall exercise her best efforts to vacate the family home on or before April 23, 2001. Upon being advised that plaintiff had arranged for substitute housing, the defendant shall immediately pay to plaintiff's attorney the sum of $3,000, which sum shall be an advance against the plaintiff's equity interest in the family home."
In early June, 2001, plaintiff and their two children vacated the family home, moving to rental property in the same community. Now, at this dissolution trial, it is defendant's position that this court should establish the value of the family home, determine a fair division of the equity, compute credits due defendant, and direct the plaintiff in accordance with the stipulation to convey her interest in the marital home to the defendant. Plaintiff on the other hand claims that the stipulation provided only for her temporary absence from their home which she now requests this court to award her when distributing the marital estate.
If, as defendant contends, the stipulation of the parties was an agreement for the conveyance of real property from one party to the other, several serious questions arise which require discussion and resolution.
Sec. 52-550 concerning the statute of frauds states in part as follows:
 "(a) No civil action may be maintained in the following cases unless the agreement or a memorandum of the agreement is made in writing and signed by the party, or the agent of the party, to be charged. . . . (4) upon any agreement for the sale of real property or any interest in or concerning real property."
"The requirements of a memorandum of sale to satisfy the statute of frauds in this state are too well established to require extended consideration. It must state the contract between the parties with such CT Page 8801 certainty that the essentials of the contract can be determined from the memorandum itself without the aid of parol proof, either by direct statement or by reference therein to some other writing or thing certain, and those essentials must at least consist of the subject of the sale, the terms of it and the parties to it, so as to furnish evidence of a complete agreement." Santoro v. Mack, 108 Conn. 683, 687-688 (1929). "A memorandum is insufficient if it fails to specify the terms of payment of any part of the purchase price." Marsico v. Kessler, 149 Conn. 236, 238
(1962).
The stipulation of the parties makes no mention of the purchase price for the property, the terms of payment, or the date for performance. It does not satisfy the statute of frauds and is unenforceable for that reason alone.
A second perplexing question is the following:
 "May a judge hearing a pendente lite matter enter orders relating to the distribution of the marital estate. If the answer is in the affirmative, a third question is "must the judge find the agreement to be fair and equitable."
On these questions this court makes the following observations:
Sec. 46b-81 C.G.S. authorizes the court to distribute the marital estate "at the time of entering a decree of dissolution. The rationale is obvious — a court would be unable to distribute the marital estate equitably without first hearing the matter on its merits.
In the event the parties at the dissolution hearing submit to the court a proposed agreement relating to the distribution of the marital estate, the judge makes certain inquiries before determining whether or not the agreement is fair and equitable.
It is found that the pendente lite agreement of the parties satisfied neither the provision of Sec. 52-550 C.G.S. relating to the Statute of frauds nor Sec. 46b-81 C.G.S. relating to the distribution of the marital estate, and for all of the above reasons is unenforceable. Any payments made by the defendant to plaintiff in accordance with the stipulation will of course be considered by this court when it equitably issues its marital orders.
 ARTICLE IV An Examination of the Evidence as it Relates to Sec. 46b-81c C.G.S. CT Page 8802
A. General Background Information
The plaintiff wife and the defendant husband were married on December 28, 1988, thirteen years ago. They have two minor children, a son Dominic who is eleven years old, and a daughter Kolu who is six. The parties met while defendant was serving in the peace corps in Liberia where plaintiff's father was a tribal chieftain and a captain of police. The romance flourished, defendant returned to his homeland in June, 1988, obtained employment and purchased plaintiff's transportation to America where the parties were shortly thereafter married.
In 1996 the parties purchased their present home at No. 22 Hazelmeadow Place in Simsbury. The parties separated in June, 2001 at which time plaintiff and the children moved to rental property in Simsbury. Defendant continues to reside in the family house.
B. Education, Health and Employment
 1. Plaintiff
Plaintiff stated that she had a tenth grade education and attended a local community college where she obtained her C.C.D. She later received a licensed nursing assistant's certificate. At the present time she earns a weekly gross of $407 from her position as a nurse assistant at the New Horizons Nursing Center with a weekly net of $305 after the usual deductions. She stated that she will be able to work full time staring in July. She further testified that her health was good.
2. Defendant
Defendant is a college graduate who has an M.A. degree in special education from St. Joseph College. He is presently employed as a special education teacher by the City of Hartford where his gross weekly pay is $900 with a weekly net after the usual deductions of $631. He also earns a weekly net of $124 from part time tutoring and other work for a total net weekly income of $525. He states that his health is good.
c. Defendant's Inheritance
Because of the relatively small size of the marital estate ($44,945) it is felt that some mention should be made of an inheritance of $39,000 received by defendant from his grandparents in 1990 and the purposes for which it was expended. Defendant testified that approximately $12,000 was spent for tuition in obtaining his M.A. degree, $2,500 on the family home, $1,000 on plaintiff's nursing education, $4,000 on a motorcycle, $2,000 on student loans, with the balance on family living expenses and CT Page 8803 in plaintiff's visit to Africa to see her family.
It is the court's uncritical observation that this inheritance was expended unselfishly for family purposes.
d. Fault
 1. Plaintiff
Plaintiff testified that marital difficulties began in 1993 when defendant told her he had been unfaithful to her. Plaintiff and her son left the family home, returning after nine months in May, 1994. In describing this incident plaintiff stated "things weren't just right. I felt betrayed." Defendant's second affair, with Jackie Randall, began in October 1999. He took their two children on vacation with her in 2000 after which plaintiff left the marital bedroom. An unsuccessful attempt at counseling followed. Finally in June 2001 plaintiff and the children left the family home because "I didn't want to fight in front of the children."
2. Defendant
Defendant was less emotional and more subdued when discussing the reasons for the breakdown of his marriage. He testified that problems arose because of (a) the Civil War in Liberia and the death of plaintiff's father; (b) plaintiff's refusal to communicate with defendant; (c) failure of the parties to become involved in counseling earlier in their marriage; (d) his relationship with Jackie which began in the early winter of 2000.
Both parties made favorable impressions on the court, particularly when discussing this factor. It is concluded that defendant is more at fault then plaintiff for the breakdown of the marriage, but that this issue should not be considered a predominating factor when distributing the marital estate.
E. Other Factors
a. The parties contributed equally, each in his or her own fashion, in the acquisition, preservation or appreciation in value of their marital estate.
b. Because defendant's skills and earning capacity exceed those of plaintiff, it is felt that his opportunity for the future acquisition of capital assets and income exceeds that of plaintiff. CT Page 8804
c. All other factors set forth in Sec. 46b-81c C.G.S. were considered by the court but do not require extended comment.
 CONCLUSION
Having considered all of the provisions of Sec. 46b-81c C.G.S. and having given particular weight to the comparative vocational skills of the parties and their relative opportunities for the future acquisition of capital assets and income, the court divides the marital estate of the parties as follows:
Plaintiff 58 percent in value
Defendant 42 percent in value
 ARTICLE V The Distribution of the Marital Estate in Accordance with the Findings Made in Article IV Supra Total Marital Estate $44,945 Plaintiff's 58% Share $26,068 Defendant's 42% Share $18,877
 A. Plaintiff Shall Take and Have
Real Estate at 22 Hazelmeadow Place, Simsbury, CT equity $ 19,202
1995 Plymouth Voyager — Personal and household effects — People's Bank — checking and savings accounts $ 100
Amount due from defendant $ 6,766 ($3,965 previously paid $2,801 now due plaintiff) -------- Subtotal $ 26,068
B. Defendant Shall Take and Have
 1996 Subaru Legacy value $7,000 loan balance $7,205 equity —
Household furnishings — Franklin Trust savings checking accounts $ 226 Hartford Federal Credit Union 51 CT Page 8805 Collinsville Savings 90 Life insurance face value $69,000 C.S.U. — State of Connecticut Teachers Retirement Fund $ 25,276 --------
Subtotal $ 25,643
 Less Amount Due Plaintiff — 6,766 -------- Amount Due Defendant $ 18,877
Total Marital Estate $ 44,945
 ARTICLE VI Supplemental Orders Relating to the Distribution of the Marital Estate
A. Said sum of $2,801 due plaintiff by defendant shall be paid to her within 60 days from the date hereof.
B. Each party shall execute all documents necessary to carry out the orders of this court.
 ARTICLE VII Orders Relating to the Minor Children A. Custody
The plaintiff and the defendant shall have joint legal custody of their two minor children with the plaintiff having primary physical custody of them. The defendant shall have reasonable rights of visitation with the children.
B. Support
The defendant is ordered to pay plaintiff as child support the sum of $209 per week. In determining this amount the court felt it equitable to consider one half of the income received by defendant from sources other than his teaching position.
C. Health Insurance
The defendant shall maintain health and dental insurance for the benefit of the minor children. The parties shall share the cost of any unreimbursed health and/or dental expenses as in the following proportions — Plaintiff 49%, Defendant 51 percent. The provisions of CT Page 8806 Sec. 46b-84e C.G.S. shall apply. Any babysitting or daycare expenses reasonably incurred by reason of plaintiff's employment shall be shared by the parties in the same proportion.
D. Income Tax Exemptions
Plaintiff shall take Kolu and defendant shall take Dominic as a defendant on their federal and state income tax returns. When only one child may be claimed as a defendant for tax purposes, plaintiff shall be entitled to claim the exemption in even numbered years and defendant shall be entitled to the exemption in odd numbered years.
 ARTICLE VIII Alimony
In making the following orders the court has considered all of the provisions of Sec. 46b-82c C.G.S.. In particular it is mindful of the present disparity both in the incomes of the parties and their comparative skills. Defendant is ordered to pay plaintiff as alimony the sum of $125 per week for a period of seven years. This order is nonmodifiable as to term only and will sooner terminate upon the remarriage of the plaintiff or the death of either party. This order should provide plaintiff with sufficient time and funds to hone her skills in the nursing field and to become a self sufficient member of her community.
 ARTICLE IX Other Orders A. Life Insurance
Defendant shall continue to maintain his present life insurance policy on himself in the minimum amount of $69,000 with plaintiff as irrevocable beneficiary during such time as defendant shall be obligated in accordance with the terms of any financial order of this court.
B. Liabilities
Defendant shall be solely responsible for the debt designated as Citibank #5424180358781547 on plaintiff's financial affidavit and as Citicard on defendant's financial affidavit. With that one exception, each of the parties shall be solely responsible for all liabilities shown on his or her affidavit and shall hold the other party harmless in that regard.
C. Counsel Fees
CT Page 8807
Each of the parties shall be solely responsible for all counsel fees incurred by that party. Neither party is awarded counsel fees.
D. Exchange of Tax Information
During such time as defendant is required to pay alimony or support the parties shall annually, commencing April 15, 2003, exchange federal income tax returns.
 ___________________ John D. Brennan Judge Trial Referee